UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:17-cv-00052-RJC-DCK

| KIMBERLY E. BARNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| NANCY A. BERRYHILL, | ) |
| Commissioner of Social Security | ) |
| Administration | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 6); her Memorandum in Support, (Doc. No. 7); Defendant's Motion for Summary Judgment, (Doc. No. 10); their Memorandum in Support, (Doc. No. 12); the Magistrate Judge's Memorandum and Recommendation (M&R), (Doc. No. 13), recommending the Court to grant Plaintiff's Motion and remand this case pursuant to Sentence Four of 42 U.S.C. § 405(g); Defendant's Objection, (Doc. No. 114); Plaintiff's Reply, (Doc. No. 15); and Defendant's Response, (Doc. No. 16).

## I. BACKGROUND

No party has objected to the Magistrate Judge's statement of the factual and procedural background of this case. Therefore, the Court adopts the facts as set forth in the M&R.

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A)

and (B). The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. at § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

**III. DISCUSSION**

    A.    The ALJ Properly Considered Plaintiff's Mild Limitations within the RFC Analysis in Accordance with *Mascio*.

The Magistrate Judge's M&R recommends remanding this case pursuant to Sentence Four of 42 U.S.C. § 405(g) because the ALJ's decision failed to consider Plaintiff's mild mental limitations when assessing her RFC. (Doc. No. 13 at 6). In reaching this conclusion, the Magistrate Judge cites Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). (Id. at 4). For the reasons that follow, this Court declines to adopt the M&R.

This case differs from Mascio. In Mascio, the plaintiff had *moderate* restrictions in concentration, persistence or pace. Mascio, 780 F.3d at 638. Here, the ALJ found that Plaintiff had *mild* difficulties not only in maintaining concentration, persistence or pace, but also in social functioning and activities of daily living. (Tr. 28). This Court does not interpret Mascio's holding as extending to all restrictions.[1] Brooks v. Berryhill, No. 3:15-CV-00440-RJC, 2017 WL 1196449, at *4 (W.D.N.C. Mar. 29, 2017) (holding that "Mascio dealt with 'moderate' restrictions and did not hold that all restrictions, including mild restrictions, be explicitly discussed in terms of RFC."). See also Gilbert v. Berryhill, No. 5:16-CV-00100-MOC, 2017 WL 1196452, at *3 (W.D.N.C. Mar.

---

[1]     There is a split of views amongst district courts regarding this issue. See, e.g., Reinhardt v. Colvin, No. 3:14-CV-00488-MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015) (finding that the ALJ failed to provide a detailed assessment of the plaintiff's mild mental limitations in the body of the RFC discussion).

29, 2017) (findings that Mascio did not apply to cases of mild difficulties); Roberson v. Colvin, No. 3:14–cv–00488–MOC, 2016 WL 5844148, at *6 (W.D.N.C. Oct. 4, 2016) (finding that, because the case "concerns only 'mild difficulties,' it [did not] trigger the RFC discussion requirements of Mascio per se.").

Due to Plaintiff's mild limitations, the Court finds the ALJ's RFC analysis sufficient. As such, the Court does not adopt the Magistrate Judge's recommendation to remand this case on the basis of Mascio. The Court will now address the Plaintiff's remaining arguments within her Motion for Summary Judgment.

  B. <u>The ALJ Properly Distributed Weight to Various Sources Within the RFC Analysis.</u>

Plaintiff's second issue seems to allege error in the ALJ's determination of weight given to various sources within the RFC analysis. Specifically, Plaintiff agues that the ALJ erred in giving the State Agency medical consultants' reports great weight. (Doc. No. 7 at 11–12). Plaintiff cites Nicholson v. Astrue, 2010 U.S. Dist. LEXIS 115629 (W.D.N.C. Oct. 29, 2010), for the proposition that "[a] single decision maker is not a medical professional of any stripe, and a finding from such an individual is entitled to no weight as a medical opinion, or to consideration as evidence from other non-medical sources." (Id. at 12). The Court, however, agrees with Defendant that in her reference to the State Agency reports, the ALJ did not intend to put great weight on the findings of the single decision maker ("SDM"), but rather on the opinions of Bevlyn Dagon, Ph.D. and Ellen Huffman-Zechman, M.D. This is because, when announcing the weight given the State Agency reports, the ALJ cites exhibits 1A, (Tr. 67–75), and 3A, (Tr. 77–87). (Tr. 32). While Veda Shukla, SMD's signature appears in the state agency reports, it is Dr. Dagon's and Dr. Huffman-Zechman's opinions the ALJ discusses in detail in the following paragraphs. (Tr. 32).

Plaintiff also argues that the ALJ erred in giving great weight to Dr. Huffman-Zeckman, the medical consultant, while not including any of the communicative or hearing limitations found within that report. (Doc. No. 7 at 12). In doing so, Plaintiff states that the medical consultant "opined as to Barnes' inability to hear with her left ear." (Id.) (citing Tr. 84). Therefore, Plaintiff concludes that the ALJ's failure to "include any communicative or hearing limitation(s)" in the RFC constitutes a harmful error. (Id.). The Court again agrees with Defendant. Dr. Huffman-Zeckman found that Plaintiff could not hear the tuning fork in her left ear. (Tr. 84). To begin with, this does not necessarily amount to an "inability to hear with [Plaintiff's] left ear." (Doc. No. 7 at 12). Furthermore, the ALJ specifically mentions Plaintiff's inability to hear a tuning fork in her left hear twice within the opinion: once during the Step Two analysis and once during the RFC determination. (Tr. 27, 32). Together, it is clear to the Court that the ALJ noted Plaintiff's difficulty with her range of hearing in her left ear, but that the ALJ found this symptom to "have not resulted in any limitation of her ability for basic work-related activities." (Tr. 28).

    C.    <u>The ALJ Properly Determined the Credibility of Testimony in Her Opinion.</u>

Finally, Plaintiff takes issue with the ALJ's determination of her credibility. (Doc. No. 7 at 13). Plaintiff first points to the ALJ's boilerplate language:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Id.) (citing Tr. 30). Plaintiff cites <u>Mascio</u> yet again, this time in conjunction with a Seventh Circuit case, <u>Parker v. Astrue</u>, for the proposition that "[t]he statement by a trier of fact that a witness's testimony is 'not *entirely* credible' yields no clue to what weight the trier of fact gave the testimony." (Id.) (quoting <u>Parker v. Astrue</u>, 597 F.3d 920, 921 (7th Cir. 2010)) (emphasis in

original).  Plaintiff then argues that ALJs may only reject claimants' testimony regarding the severity of their symptoms by providing specific evidence.  (Id. at 14).  Here, the Plaintiff claims that the ALJ did not provide legally sufficient reasoning for rejecting Plaintiff's testimony when she "simply recit[ed] the medical evidence in support of his residual functional capacity determination." (Id.).  Rather, Plaintiff states that the ALJ should have specified which testimony she found credible along with additional reasoning citing the evidence within the record.  (Id.).

Specifically, Plaintiff states that the ALJ improperly decreased the credibility of Plaintiff's testimony after listing the daily activities Plaintiff was able to accomplish.  (Id. at 15).  This evidence of "sporadic daily activities" do not equate to working full time at a medium exertional level, Plaintiff argues.  (Id.).  Plaintiff also points to the ALJ's statement that, "[n]o treating source opined that Plaintiff has disabling impairments." (Id. at 16) (citing Tr. 33).  This statement, Plaintiff asserts, represents an improper negative inference.  (Id.)  Plaintiff maintains that no agency guidance authorizes ALJs to rely on negative inferences.  Plaintiff also argues the ALJ's "negative inference" equates to relying on extra-record evidence: what the treating sources believed.  (Id.).

Plaintiff's argument is, again, unpersuasive.  First, the ALJ's use of boilerplate language is permissible because it was followed by a detailed discussion of her reasoning.  Mascio is not a talisman to be waived in factually apposite cases. In Mascio, the Fourth Circuit found error in the ALJ's opinion when he failed to explain which of the claimant's statements were credited and which were discredited.  The ALJ merely included "the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering Mascio's residual functional capacity." Mascio, 780 F.3d at 640.

Here, the ALJ began by specifying Plaintiff's testimony, which was ultimately deemed less than credible. The ALJ recounted that Plaintiff claimed a state of dizziness that rendered her unable to "do anything." (Tr. 30). The ALJ further noted other complaints such as pain throughout Plaintiff's body, trouble sleeping, shortness of breath in the face of smoking cigarettes, the ability to only lift five-pound objects, stand for approximately 15 minutes, and walk for 30 minutes. (Id.). These statements of intensity and limiting effects were then deemed "not entirely credible." (Id.).

In support of her credibility determination, the ALJ analyzed in great detail the evaluations performed by Dr. James A. Armstrong. Among Dr. Armstrong's findings, the ALJ noted that Plaintiff maintained full range of motion and had no appreciable swelling in her joints, no diagnoses of autoimmune inflammatory conditions or indications of immunosuppression, an unremarkable MRI, a normal sleep study, and relatively normal neurological examinations that revealed no definitive neurological conditions interfering with Plaintiff's ability to work. (Id. at 30–31). Furthermore, chiropractic records reveal that Plaintiff performed light exercise on a regular basis. (Id.). All of this medical evidence contradicts Plaintiff's testimony of trouble sleeping or experiencing dizziness to the extent of not being able to "do anything."

It was on top of the above medical evidence that the ALJ compounded Plaintiff's daily living activities. The ALJ went into considerable depth tying in the medical evidence above. The ALJ made it explicitly clear that her credibility determination was not *solely* based on Plaintiff's daily living activities. After listing medical evidence, the ALJ stated:

> [Plaintiff] has admitted that she was able to tend to her personal hygiene, cook, take her medications independently, clean, shop, handle her finances, take care of her pets, wash laundry, read, visit her grandchildren and attend their extra-curricular activities, and garden, activities, which generally reveal functioning at a greater level than alleged (Exhibit 5E). *These activities, when viewed in conjunction with the other inconsistencies, further limit the claimant's credibility*. Of note, her descriptions of her daily

> activities are representative of a fairly active lifestyle and are not indicative of a significant restriction of activities or constriction of interests.

(Tr. 32) (emphasis added). The Fourth Circuit has held that ALJs may rely on daily activities to find that they do not comport with claimants' complaints of pain. In Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005), the Fourth Circuit found that the daily activities of attending church twice a week, reading books, watching television, cleaning the house, washing clothes, visiting relatives, feeding the family pets, cooking, managing household finances, and performing stretches recommended by chiropractors was inconsistent with a claimant's statements of excruciating pain and her inability to perform regular movements. Furthermore, SSR 96-7p explicitly allows the assessment of a claimants' daily activities when determining her credibility. Titles II & Xvi: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7P, at *3 (S.S.A. July 2, 1996).

The Court also rejects Plaintiff's complaint regarding the ALJ's alleged negative inference. The ALJ simply concluded that the record held no evidence of disabling impairments. (Tr. 33). This sentence was in the last paragraph of the RFC analysis and merely summarized the overall effect of the detailed medical evidence the ALJ summarized prior.

Finally, Plaintiff objects to the ALJ's credibility determination regarding her father's testimony. Plaintiff argues that the ALJ did not have sufficient reasons to discount Plaintiff's father's testimony as she merely stated that he was colored by his relationship with Plaintiff and would naturally present a tenancy to agree with the symptoms and limitations Plaintiff alleges. (Tr. 33). Plaintiff argues that this recognition of familial relationships shows speculation on the part of the ALJ. (Doc. No. 7 at 19).

A per se discounting of family member observations is reversible error.  Morgan v. Barnhart, 142 F. App'x 716, 731 (4th Cir. 2005).  However, here, the ALJ did not discount the testimony in question solely because of a father-daughter relationship.  The ALJ specifically emphasized that the father answered, "I don't know," to 16 questions on his third party function report.  (Tr. 33).  While the ALJ may consider nonmedical sources about issues involving claimants' cases, the ALJ may nonetheless determine that those sources are less than credible.  See 20 C.F.R. § 404.1513(a)(3).  The ALJ therefore did not "make a single, conclusory statement that … "the allegations [of an individual] are (or are not) credible."  SSR 96-7p.  Rather, the ALJ gave two specific reasons: (1) the enhanced chance of familial bias; (2) the inadequacy of information portrayed in the third party function report.  The additional reasoning by the ALJ was sufficient to determine that the third party function report was less than reliable.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's M&R, (Doc. No. 13), is **REVERSED**;

2. Plaintiff's Motion for Summary Judgment, (Doc. No. 6), is **DENIED**; and

3. Defendant's Motion for Summary Judgment, (Doc. No. 10), is **GRANTED**;

4. The Clerk of Court is directed to close this case.

Signed: February 21, 2018

Robert J. Conrad, Jr.
United States District Judge